IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | § | |
|---|---|---|
| In re SOUTHERN CALIFORNIA EDISON COMPANY | § § § § § | CIVIL ACTION NC 6:16-CV-57 |

## MEMORANDUM OPINION AND ORDER

Southern California Edison appeals from the Order of the Bankruptcy Court that denied its Motion for Entry of an Order Authorizing Termination of Forward Contracts Pursuant to 11 U.S.C. § 556. The Court reverses the judgment of the bankruptcy court that Southern California Edison waived its right to terminate the contract.

### I. BACKGROUND

Linn Energy, LLC and Berry Petroleum Company, LLC (Berry) filed Chapter 11 bankruptcy on May 11, 2016. Previously, Berry entered into two electricity supply and capacity agreements (Agreements) with Southern California Edison (SCE) in July 2012 and April 2014.[1] The Agreements provided that Berry would supply SCE with electricity and capacity from its cogeneration plants in California for a term of 84 months each.

Both Agreements provided Termination Rights of the parties for an event of default that included either party becoming bankrupt,[2] and provided a process of early termination.[3] Both contracts also recited that the "Agreement and transactions

---

[1] The contracts are lengthy and are included within D.E. 2-2, beginning at page 5760.

[2] Agreement, § 6.01(a)(iv).

[3] Early Termination. If an Event of Default has occurred, there will be no opportunity for cure except as specified in Section 6.01 or pursuant to a Collateral

1

contemplated by this Agreement constitute a 'forward contract' within the meaning of the United States Bankruptcy Code and that Buyer and Seller are each 'forward contract merchants' within the meaning of the United States Bankruptcy Code." § 9.08(m).

Berry provided notice of its bankruptcy filing to SCE on May 27, 2016.[4] SCE filed its motion for authorization to terminate the Agreements on July 22, 2016, 56 days after service. Berry filed its objections to SCE's motions on August 12, 2016. The Official Committee of Unsecured Debtors joined in Berry's objections. On August 15, 2016, SCE filed its reply to the objections.

The bankruptcy court held an evidentiary hearing August 16, 2016,[5] on SCE's motion. The parties presented testimony from Marci Palmstrom, from SCE,[6] and from

---

Assignment Agreement agreed upon by Buyer, Seller and Lender in accordance with Section 9.05.
The Party taking the default (the "Non-Defaulting Party") will have the right to:
    (a) Designate by Notice to the Defaulting Party a date, no later than 20 days after the Notice is effective, for the early termination of this Agreement (an "Early Termination Date");
    (b) Immediately suspend performance under this Agreement; and
    (c) Pursue all remedies available at law or in equity against the Defaulting Party (including monetary damages), except to the extent that such remedies are limited by the terms of this Agreement.
*Id.*, § 6.02.

[4] Berry argued that SCE knew earlier based upon the appearance of a lawyer for several utilities, including SCE, who filed a motion to appear *pro hac vice* in the proceedings on May 25, 2016. D.E. 2-2, p. 6510. That appearance was in response to an order of the bankruptcy court on the first day regarding utilities provided by the companies to various Berry and Linn facilities. That counsel does not represent SCE in these proceedings regarding the Agreements and had nothing to do with the Agreements between Berry and SCE. *See* D.E. 2-1, entries 15, 85, 174, 175.

[5] The hearing transcript is included in D.E. 2-2, pp. 6354-6501.

[6] Marci Palmstrom was the Manager of Energy Contracts Management for SCE.

Thomas Cruz, a Linn employee.[7] Ms. Palmstrom testified that after SCE learned of the Linn bankruptcy through a press release, SCE looked at the Agreements to determine whether bankruptcy qualified as an event of default. Although SCE was aware that Linn owned Berry, the Agreements only provided an event of default if Berry became bankrupt.[8] D.E. 2-2, pp. 6423-24. In mid-June 2016, SCE performed an analysis of the Agreements and determined that the Agreements were out of the money "upwards of $30,000,000." *Id.*, pp. 6424, 6426. After consulting with counsel, SCE determined that it should seek relief in the bankruptcy court rather than unilaterally terminate the Agreements. Ms. Palmstrom testified that Berry continued to perform under the Agreements; SCE did not seek emergency relief from the bankruptcy court, and the only reason SCE wanted to terminate the contracts was that SCE was out of the money.

Mr. Cruz testified that the two cogeneration plants continued to supply electricity to SCE without interruption and SCE continued to accept the electricity in the same quantities as before. *Id.*, pp. 97-98. According to Mr. Cruz, if SCE were permitted to

---

[7] Thomas Cruz was the Field Services Manager for the California Division of Linn Operating, Inc.

[8] Bankrupt is defined in the Agreement as follows:
> "Bankrupt" means with respect to any Person, such Person:
> (a) Files a petition or otherwise commences, authorizes or acquiesces in the commencement of a proceeding or cause of action under any bankruptcy, insolvency, reorganization or similar law, or has any such petition filed or commenced against it (which petition is not dismissed within 90 days);
> (b) Makes an assignment or any general arrangement for the benefit of creditors;
> (c) Otherwise becomes bankrupt or insolvent (however evidenced);
> (d) Has a liquidator, administrator, receiver, trustee, conservator or similar official appointed with respect to it or any substantial portion of its property or assets; or
> (e) Is generally unable to pay its debts as they fall due.

D.E. 2-2, p. 5828, Exhibit A *Definitions* to Agreement.

terminate the Agreements Berry would have to make a choice between three options, 1) to replace the contract with SCE with another similar contract, 2) sell electricity on the spot market, or 3) to install conventional steam equipment at both locations to replace the cogeneration facilities at a cost of approximately $10 million. *Id.*, pp. 99-102.

Counsel for Berry argued that Berry began negotiating with SCE over the Agreements after July 22, 2016, and the negotiations continued until the week before the hearing. D.E. 2-2, p. 6395-96. The parties' positions regarding the negotiations, as set forth in Berry's response and objection, and SCE's reply, conflict. There is no evidence regarding the negotiations, other than a brief mention by Berry's witness that he participated in two phone calls in which negotiations were briefly discussed. *Id.* at 6510. Berry's counsel further argued that Berry did not know for certain that SCE intended to terminate the Agreements until SCE filed its reply on August 15, 2016.

At the conclusion of the hearing, the Bankruptcy Court found that SCE waived its right to terminate and declined to decide whether the contracts were forward contracts. SCE appeals from that Order (D.E. 2-1, pp. 6502-03).

## II. STANDARD OF REVIEW

"The district courts of the United States shall have jurisdiction to hear appeals (1) from final judgments, orders, and decrees" of a bankruptcy court. 28 U.S.C. § 158(a)(1). This Court reviews the bankruptcy court's findings of fact for clear error; its conclusions of law *de novo*, and mixed questions of law and fact *de novo*. *In re TMT Procurement Corp.*, 764 F.3d 512, 519 (5th Cir. 2014) (per curiam). "As to all findings of fact, however, a reviewing court of a bankruptcy decision must accept the findings as found, unless they are clearly erroneous." *Matter of Missionary Baptist Foundation of Am.*, 818

4

F.2d 1135, 1142 (5th Cir. 1987). "A finding of fact is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* (internal citations omitted). "However, when a finding of fact is premised on an improper legal standard, or a proper one improperly applied, that finding loses the insulation of the clearly erroneous rule." *In re Friedheim*, 277 Fed. App'x 485, 488 (5th Cir. 2008) (per curiam) (unpublished).

### III. ANALYSIS

#### A. Waiver[9]

This appeal requires the Court to determine whether a party waives application of an *ipso facto* clause by delay of less than 90 days after notice of the counterparty's bankruptcy before asserting its desire to terminate, even in the absence of language in the statute regarding time limitations or evidence in the record regarding business circumstances.

SEC argued that the Agreements constituted forward contracts, SCE and Berry were forward contract merchants, and SCE was entitled to terminate the Agreements based upon Berry's default. In response, Berry argued that if SCE had the right to terminate under the Agreements, SCE waived that right because SCE failed to act promptly. Berry further argued that the legislative history required that the remedies afforded by § 556 to be exercised promptly and relied upon bench rulings by Bankruptcy

---

[9] Waiver is defined under California law as the intentional relinquishment of a known right. The burden is on the party asserting waiver. *Salyers v. Metropolitan Life Ins. Co.*, 871 F.3d 934, 938 (9th Cir. 2017); *see also Intel Corp. v. Howard*, 952 F.2d 1551, 1559 (9th Cir. 1991).

5

Judge Peck in *In re Lehman Bros-Holdings Inc.*, No. 08-13555 (Bankr. S.D.N.Y. June 15, 2009) (Docket No. 5621).

At the conclusion of the hearing, the bankruptcy court made the following findings and conclusions:

- The court did not consider the filed declarations,

- The court found Ms. Palmstrom to be an unreliable witness,

- I agree with the waiver argument, "that if you're going to rely on—solely on an *ipso facto* clause, it has to be done quick,"

- SCE made no "genuine explanation of what has occurred other than a professed inability to know actually when the event of default occurred,"

- "[I]nherent in every provision of the bankruptcy code is a requirement of good faith,"

- Good faith was lacking by SCE.

D.E. 2-2, pp. 06484-486. The bankruptcy court found that SCE waived its right to terminate the Agreement, without deciding whether the Agreements were forward contracts.

Section 556 and other safe harbor provisions provide exceptions to other portions of the Bankruptcy Code that protect debtors from discrimination due to their bankruptcy, such as § 365(e)(1).[10] If SCE qualifies as a forward contract merchant and the

---

[10] (e)(1) Notwithstanding a provision in an executory contract or unexpired lease, or in applicable law, an executory contract or unexpired lease of the debtor may not be terminated or modified, and any right or obligation under such contract or lease may not be terminated or modified, at any time after the commencement of the case solely because of a provision in such contract or lease that is conditioned on--
    (A) the insolvency or financial condition of the debtor at any time before the closing of the case;
    (B) the commencement of a case under this title; or

6

Agreements qualify as forward contracts,[11] § 556 allows SCE to terminate the Agreements notwithstanding subsection 365(e)(1).

The text of § 556 does not include a time limitation on the right to terminate:

> The contractual right of a . . . forward contract merchant to cause the . . . termination . . . of a . . . forward contract because of a condition of the kind specified in section 365(e)(1) of this title . . . shall not be stayed, avoided, or otherwise limited by operation of any provision of this title or by the order of a court in any proceeding under this title. . . .

11 U.S.C. § 556.

In *Toibb v. Radloff*, 501 U.S. 157 (1991), the Court enforced the plain language of the bankruptcy statute defining the class of debtors permitted to file under Chapter 11, reversing the lower courts. The lower courts relied on the legislative history, policy considerations, and the structure of the Code to engraft an "ongoing business" requirement for debtors who sought to file under Chapter 11. The Court stated: when "the resolution of a question of federal law turns on a statute and the intention of Congress[,] we look first to the statutory language and then to the legislative history if the statutory language is unclear." *Id.* at 162; *In re Village at Camp Bowie, La.*, 710 F.3d 239, 246 (5th Cir. 2013) ("the Bankruptcy Code *must* be read literally, and congressional intent is relevant only when the statutory language is ambiguous.") (emphasis in

---

        (C) the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement.

*Id.*

[11] There is no dispute that electricity is a commodity and the Agreements have a maturity date more than two days after the agreements were entered into. *See In re MBS Management Servs*, 690 F.3d 352, 355-56 (5th Cir. 2012).

original);[12] *Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*, 651 F.3d 329, 339 (2d Cir. 2011) (rejecting Enron's arguments regarding the use of legislative history to modify the plain terms of the bankruptcy statute). Berry relied heavily on Judge Peck's oral findings in *In re Lehman Brothers Holdings Inc.*, that a counterparty waived its rights under the safe harbor provisions. However, that case differs in two important respects from the case before the Court. In *Lehman Brothers*, the counterparty both refused to perform and refused to terminate for a year during which time the market changed in the counterparty's favor, according to Berry's recital of the facts. *See* D.E. 2-2, p. 6320-21. Here, both Berry and SCE have continued to perform. SCE filed its motion no later than 72 days after Berry filed its bankruptcy petition and 57 days after Berry gave notice of its filing.

In another case on which Berry relied, the *Mirant/Kern* case, Bankruptcy Judge Lynn found that a counterparty that waited seven weeks to terminate a swap agreement with a debtor was entitled to terminate under a safe harbor provision based upon an *ipso facto* clause. *See In re Mirant Corp.*, 314 B.R. 347 (N.D. Tex. 2004) (re § 560 swap). Judge Lynn also rejected the Debtor's waiver argument, in part due to inequitable conduct by the Debtor.

The bankruptcy court in this case relied on a single factor, promptness, to determine waiver. However, the Bankruptcy Code prohibits a court from engrafting

---

[12] *See also Weaver v. Aquila Energy Marketing Corp.*, 196 B.R. 945, 954 (S.D. Tex. 1996) ("[C]ourts should depart from the strict language of a Bankruptcy Code section only when the language is unclear, ambiguous, or clearly contrary to the Code's purpose and history."); *In re Lehman Bros. Holdings, Inc.*, 469 B.R. 415, 436 (S.D.N.Y. 2012) ("the language of the safe harbors [considering §§ 546, 548] is to be strictly interpreted even when the outcome may be prejudicial to the interests of the estate and its creditors.").

barriers to the use of an *ipso facto* clause in certain kinds of contracts. Moreover, the Supreme Court also prohibits courts from engrafting requirements onto the Code. *See Toib*, 501 U.S. at 162.

The Court finds that the statutory language does not mention the timing of termination of a contract subject to section 556. There is also no Fifth Circuit or United States Supreme Court ruling that reads a promptness requirement into the statute. As a result, SCE could not have known that it was required to move "quick[ly]" after its counterparty filed bankruptcy to avoid waiver. The Court finds that the bankruptcy court's reading of the statute erected a court imposed barrier to the plain language of § 556. Accordingly, the Court reverses the bankruptcy court's finding of waiver based on the court's erroneous inclusion of an extra-statutory promptness requirement in § 556.

### B. Equitable Mootness

Berry further argues that if Southern California Edison prevails on appeal and is authorized to terminate the contracts at issue, that termination would threaten the success of the confirmation plan. Because the appeal was taken before confirmation, this Court has no factual record from which to determine whether Berry's claim is correct. The Court remands this matter for fact findings on the issue of whether the relief requested would affect the rights of parties not before the court or the success of the plan.

## CONCLUSION

The court REVERSES the bankruptcy court's finding that SCE waived its right to terminate the Agreements and DENIES Appellee Berry Petroleum Company, LLC's Motion to Dismiss Appeal (D.E. 12).

ORDERED this 15 day of February, 2018.

_____
HAYDEN HEAD
SENIOR U.S. DISTRICT JUDGE